# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:12-CV-00122-MOC-DSC

| | |
|---|---|
| STEVEN LEE CLARK,<br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>    Defendant. | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #12) and "Memorandum in Support ..." (document #13) both filed September 19, 2012; and Defendant's "Motion for Summary Judgment" (document #14) and "Memorandum in Support..." (document #15), both filed October 31, 2012.

This case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 29, 2008, alleging he became disabled on February 1, 2007. (Tr. 104-07). Plaintiff's application was denied initially and on reconsideration. A hearing was held on April 30, 2010. (Tr. 28-53).

On June 11, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 13-27). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ also found that Plaintiff suffered from degenerative disc disease of the lumbar spine. (Tr 18). The ALJ found this to be a severe impairment within the meaning of the regulations, but also found that it failed to meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform the full range of medium work.[2] (Tr 18).

The ALJ then found that Plaintiff could not perform any of his past relevant work. (Tr. 22). The ALJ relied upon the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 203.26, in finding that Plaintiff is not disabled since he has the ability to perform the full range of medium work. (Tr. 22-23). The ALJ finally concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 23).

By notice dated December 27, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on February 23, 2012. Plaintiff argues that the ALJ erred in evaluating his credibility and impairments, and in weighing several medical opinions. See Plaintiff's "Memorandum ..." at 14-21 (document #13). The parties' cross dispositive Motions are

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

"Medium" work is defined in 20 C.F.R. § 404.1567(c) as follows:
> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work

2

ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at

3

1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3] Plaintiff alleges that the ALJ improperly evaluated the opinions of Dr. Russell I. Emerson, his family physician, and Dr. James E. Neal, his treating internist. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

The ALJ stated that he "c[ould] give neither physician's opinion much weight" and then explained his reasoning. (Tr. 21). The ALJ correctly found that there were few positive objective findings beyond two MRIs. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (less weight may be given to treating physician opinions primarily based on subjective complaints). There is substantial evidence that is inconsistent with the opinions of Plaintiff's treating physicians. As the ALJ explained:

> In addition to his work record and his ability to perform heavy labor the record fails to contain much in the way of positive objective findings. Whenever range of motion studies were done they revealed full range of motion. While treating physicians Dr. Neal and Dr. Emerson have recorded the claimant['s] subjective complaints, neither physician has recorded significant and/or persistent positive objective findings such as reduced range of motion, the presence of muscle spasm, positive straight leg raising, reflex abnormalities, etc. … While the record does contain MRI findings of degenerative disc disease with some disc bulges and foraminal narrowing there is no evidence of nerve root compression to account for the claimant's allegations of leg pain and numbness. … While the claimant is taking Xanax there is no documented evidence or reports of anxiety or of any significant mental symptoms including depression. There is also no evidence of any reported side effects from the medication he is taking and the claimant has informed his treating physician that the medications have been effective in controlling his pain. It should also be pointed out that neither of the claimant's treating doctors has felt that the claimant's back pain is serious enough to necessitate a referral to a specialist… While Dr. Emerson also listed a 2006 NCS that documented carpal tunnel syndrome and which apparently resulted in imposed limitations in the use of the upper extremities, a review of both Dr. Neal's and Dr. Emerson's progress notes fail to contain complaints of difficulty using the hands for grasping or manipulating, nor do the notes contain comments or complaints on the part of the claimant that he had any significant difficulty in using his upper extremities.

(Tr. 21-22). The ALJ properly found that the physicians' opinions were: (1) based mostly on subjective complaints; (2) largely unsupported by positive objective findings; and (3) inconsistent with Plaintiff's work history. Under Craig and Mastro, the ALJ was justified in assigning significantly less than controlling weight to those opinions by treating sources. Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. In a corollary argument, Plaintiff alleges that the ALJ improperly

5

relied upon the opinion of Dr. Jessup, a non-examining physician. See 20 C.F.R. § 404.1527. "[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984)). Dr. Jessup reviewed the medical records through the date of her October 31, 2008 evaluation. She also considered the fact that after his alleged disability date, Plaintiff worked in heavy construction, searched for jobs, and applied for unemployment benefits. (Tr. 268-69). Dr. Jessup's opinion was entirely consistent with the evidence of record. The ALJ did not rely solely upon Dr. Jessup's opinion (Tr. 21-22). Her opinion was one of several factors that, taken together, constitute substantial evidence supporting the ALJ's decision. The ALJ also considered the records subsequent to Dr. Jessup's evaluation, including the latest MRI results. (Tr. 20, 21). "The fact that the state agency physician did not have access to the entire evidentiary record—because the record was incomplete at the time of the assessment—is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination." Thacker v. Astrue, No. 11-246, 2011 WL 7154218 at *6 (W.D.N.C. Nov. 28, 2011).

Plaintiff next argues that the ALJ erred by not finding his anxiety and carpal tunnel syndrome to be severe impairments. An impairment is not severe "if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). An impairment is not "severe" for purposes of step two if it is a slight abnormality with minimal effect on an individual's ability to work. Cowan v. Astrue, No. 11-7, 2012 WL 1032683 at *3 (W.D.N.C. March 27, 2012) (citing Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)).

The Fourth Circuit has explained, however, that a diagnosis alone does not mean that an impairment is severe. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986). Rather, Plaintiff must show some resulting limitation in the ability to do "most jobs." Id., citing 20 C.F.R. 416.921(b). An

impairment reasonably controlled by medication is not "severe." Gross, 785 F.2d at 1166. Plaintiff must prove these impairments are severe. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (a claimant bears the burden of production and persuasion at steps one through four).

There was no evidence of limitation resulting from Plaintiff's anxiety. The ALJ considered medical opinions, including those by Drs. Neal (Tr. 21, 288), Emerson (Tr. 21, 298-305), and Cruise (Tr. 270-83). None of these opinions noted any significant functional limitations caused by anxiety. Dr. Emerson did diagnose anxiety and prescribed Prozac on October 6, 2006. (Tr. 182). However, Plaintiff stopped taking it sometime before March 20, 2007. (Tr. 219). Dr. Neal prescribed Xanax on March 20, 2007, for insomnia, not anxiety. (Tr. 21, 150, 219-20). As Dr. Cruise noted, Plaintiff was never referred to a mental health clinician. That is an indication that Plaintiff's condition was reasonably controlled by medication. (Tr. 282). Substantial evidence supports the ALJ's finding that Plaintiff's anxiety was not severe.

There is little evidence that Plaintiff's carpal tunnel syndrome impacted his ability to work. Plaintiff lost his utility and trenching jobs because of pain, restructuring, or performance, and not due to difficulties with his hands. (Tr. 138, 219, 226). He was able to perform heavy construction and "odd jobs" after his alleged onset date. (Tr. 138, 221, 223, 225). Dr. Neal's notes reference fingertip numbness once, but only back and neck pain are listed as symptoms (Tr. 215-32, 298-99). Dr. Neal provided no explanation for his conclusions regarding Plaintiff's ability to manipulate objects. (Tr. 301-302). Dr. Jessup opined that Plaintiff could "frequently" but not "constantly" perform bilateral handling. (Tr. 22, 265). Dr. Neal never mentioned carpal tunnel syndrome in his disability opinion. (Tr. 288).

The ALJ relied upon a large body of evidence in formulating Plaintiff's RFC. The ALJ took into account medical records from three ER visits (Tr. 19, 188-97, 200-13, 214), and two treating

7

physicians (Tr. 19-22, 179-85, 215-32, 289-97); a 2006 MRI (Tr. 21, 285-86), and a 2010 MRI. (Tr. 20, 306-07). He evaluated opinions by treating physicians Drs. Neal and Emerson (Tr. 21, 288, 298-305), as well as Dr. Jessup's Physical RFC Assessment. (Tr. 22, 262-69). A Psychiatric Review Technique addressed Plaintiff's mental condition. (Tr. 270-83). The ALJ discussed Plaintiff's use of Xanax and the evidence supporting a finding of anxiety or depression. (Tr. 21). The ALJ reviewed the treatment records about carpal tunnel syndrome and noted that Plaintiff made no specific complaints of difficulty using his hands. (Tr. 22). He considered Dr. Jessup's RFC Assessment that found only slight limitations on Plaintiff's upper extremities, and also took into account Plaintiff's work history and daily activities. (Tr. 22). In short, the ALJ supported his conclusion with all the relevant evidence and explained his reasoning in detail.

The ALJ found that Plaintiff could not perform "heavy" work, despite undisputed evidence that he worked heavy jobs during his period of alleged disability. (Tr. 22, 116, 138). The ALJ found that Plaintiff was only capable of "medium" work, as defined in 20 C.F.R. § 404.1567. (Tr. 18, 22).

Plaintiff finally argues that the ALJ erred in assessing his credibility. A review of the ALJ's decision reveals that his credibility assessment is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation

must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's degenerative disc disease of the lumbar spine – which could be expected to produce some of the symptoms he claims. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.") The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). An ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

In comparing Plaintiff's testimony with other evidence in the record, and considering the factors outlined in 20 C.F.R. sections 404.1529(c)(3) and 416.929(c)(3), the ALJ determined that Plaintiff's subjective complaints were not completely credible. The ALJ explained that Plaintiff's statements were not credible because:

> The claimant is alleging disability since early 2007 due to disabling back pain. However, the record shows that for much of that time the claimant was in fact either working, performing heavy labor, was seeking work or was collecting unemployment benefits. He alleged that he stopped work on February 1, 2007 but a progress note by Dr. Neal dated February 19, 2007 relates the claimant's comment that he was experiencing a lot of stress at work. Then in August 2007 the claimant informed Dr. Neal that he was working doing odd jobs. On January 4, 2008 the claimant informed Dr. Neal that he was back at work, which implies that he returned to some type of regular (full time) job, and the claimant described this job as heavy construction work. Then in February 14, 2008 the claimant stated that he was still able to work as long as he took his medications. The claimant reported on March 10, 2008 that he was still working digging trenches and installing gas lines. In April 2008 the claimant reported that he was out of a job because he could not work fast enough and in August 2008 the claimant reported that he had been unable to find a job, which implies that he had been looking for work. However, in a form completed by the claimant he indicated that he had stopped working on March 1, 2008 because he had been laid off [Tr. 123]. The record also shows that the claimant collected unemployment benefits during the second and third quarters of 2008 and during the second and third quarters of 2009 [Tr. 108-09]. In order to receive unemployment benefits an individual must declare that he/she is ready, willing and able to work and must actively seek work. Thus, while the claimant has alleged disability due to severe back pain since February 1, 2007 the record documents that for the majority of the time through the end of 2009 the claimant has either engaged in work activity, has been looking for work or has been on unemployment benefits. Moreover, the work that the claimant has been performing has generally been heavy labor. The record fails to document that he has stopped performing any job because he was physically unable to perform it. As such the undersigned finds this claimant to have little or no credibility.

(Tr. 21). It is well established in the Fourth Circuit that an ALJ may rely upon evidence of a claimant's daily activities to evaluate subjective complaints of pain. <u>Mickles v. Shalala</u>, 29 F.3d 918, 921 (4th Cir. 1994) ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life"). Moreover, "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, available at 1996 WL 374186 at *5. As quoted above, the ALJ properly relied on work history and numerous related inconsistencies in discounting Plaintiff's credibility. Substantial evidence supports this conclusion.

Although the medical records establish that Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from his combination of impairments, but was not disabled.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #12) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #14) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo

review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: November 7, 2012

David S. Cayer
United States Magistrate Judge